**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JIMI ROSE, | ) | CIVIL ACTION |
| Plaintiff | ) | |
| | ) | No.  02-CV-3842 |
| vs. | ) | |
| | ) | |
| CITY OF ALLENTOWN,  and | ) | |
| ZONING HEARING BOARD OF THE | ) | JURY TRIAL DEMANDED |
| CITY OF ALLENTOWN, | ) | |
| Defendants | ) | <u>EMERGENCY STATUS</u> |

<u>**FIRST AMENDED COMPLAINT**</u>

The Plaintiff, JIMI ROSE, through his attorneys, John J. Keller, Esquire, and W. Thomas Anthony, Jr., Esquire, respectfully represents that:

<u>**Parties**</u>

1.      Rose, the Plaintiff, is an adult individual residing at 911 Barnsdale Road, Allentown, Lehigh County, Pennsylvania.

2.      Defendant CITY OF ALLENTOWN is a municipal corporation whose offices are located at 435 Hamilton Street, Allentown, Lehigh County, Pennsylvania.

3.      Defendant ZONING HEARING BOARD OF THE CITY OF ALLENTOWN is a department of the municipal government for the City of Allentown, whose offices are located at 435 Hamilton Street, Allentown, Lehigh County, Pennsylvania.

## Jurisdiction

4.      Jurisdiction in the District Court exists by virtue of 28 U.S.C §1337, 28 U.S.C. §1331, 28 U.S.C. §1343 and 28 U.S.C. §1367.  Jurisdiction also exists pursuant to 42 U.S.C. §1981, 42 U.S.C. § 1983, 42 U.S.C. §1985(3).  Jurisdiction exists, *inter alia,* because the Defendants acted under color of state law, and their actions deprived Rose of a constitutionally protected right.  Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908 (1981).  Riley v. Jeffes, 777 F.2d 143 (3rd Cir. 1985).

## Factual Background

5.      Rose is a 59-year-old black man, who operates a Bring Your Own Bottle ("BYOB") club with adult nude entertainment located on Hanover Avenue in Allentown.

6.      In 1991, Greg Abbott, a white man, opened a BYOB nightclub called "Hollywood Nights" at the location in question, which featured nude dancers.

7.      The location of the subject establishment is zoned commercial but there are a small number of residences in the immediate vicinity of the nightclub.

8.      Before 1991, the location housed a gay bar called "Jeff's City Line Pub", also featuring nude dancers; prior thereto it was a gay bar called "Rosemary's", and before that, a "biker" bar called "The Old Flat Iron", also with strippers and exotic dancers.

9.      The Hollywood Nights building is older than all of the houses in the vicinity, having been operated as a bar or nightclub for its entire existence.

10.      The building is on an "island" lot at a point where several streets intersect; no other buildings are connected to the establishment and it is surrounded on all sides by the intersecting streets, all of which creates a steady flow of traffic.

2

11.     Directly across the street is a popular and extremely large new car dealership that has a lengthy frontage on Hanover Avenue plaintiff estimates to be about 200 to 300 feet.

12.     All of the previous owners and operators of the building were white, and it was not until 1992 or 1993, after Rose entered the business, that the racial discrimination started.

13.     While Greg Abbott operated Hollywood Nights, he had no problems from his neighbors or from the City of Allentown or its zoning office.

14.     On or about January 1992, Greg Abbott transferred ownership of the nightclub to his daughter Kelly, and Rose took over the day-to-day management of the nightclub.

15.     In 1993, the City of Allentown zoning office challenged the zoning legality of Rose's nightclub, saying that he violated the zoning regulations, which was a claim never asserted while the club was operated by white persons.

16.     On September 16, 1993, the Allentown Zoning Hearing Board granted Rose a special exception to operate the club, but imposed a restriction that it must close at midnight.

17.     Rose appealed the restriction on hours to the Court of Common Pleas of Lehigh County, but after negotiations between Rose's counsel and counsel for the zoning office, Rose withdrew his appeal based upon a representation by the Allentown Zoning Office and/or its counsel that the restriction would not be enforced, apparently due to the City's implicit recognition that the Board did not have express authority to impose time restrictions.  A letter from Rose's counsel confirming that scenario of events is attached hereto as Exhibit A.

18.     Although the restriction was not enforced or validated for several years pursuant to the aforesaid 'agreement' by the city, later in the 1990's a change of administrations resulted in a new policy of full enforcement.

19.    Despite Atty. McGogney's letter and recent uncontradicted testimony before the Board, and despite the formal, docketed appeal from 1993, the City for a long time denied that there ever was an appeal filed, and now continues to deny its promise of non-enforcement of the *ultra vires* actions of the Zoning Board.

20.    Due to the period of non-enforcement, Rose's club qualified legally as a non-conforming use under the Allentown Zoning Code, but the city refuses to recognize that status.

21.    Later ordinances to the Zoning Code specifically mandate 12:00 a.m. midnight closings for strip clubs and BYOB establishments; the Zoning Board refuses to recognize Rose's nonconforming status despite the essentially uncontradicted evidence presented to that body.

22.    At the same time that the City of Allentown was challenging Rose's operating hours, another BYOB club featuring nude dancers, "Erv's", owned by Erv Featherman, who is white, was operating within the City of Allentown.

23.    Erv's is located adjacent to a 500-unit apartment complex; and, its parking lot directly connects to a children's playground for the complex, which constitutes a prohibited situation under the zoning law of Allentown.

24.    Allentown did not challenge Erv's, even though the conditions existing there were far worse than those at Rose's club, which does not adjoin a children's playground and is not next door to a residential apartment complex; further, Erv's had enjoyed non-enforcement of various zoning provisions since its opening in 1988.

25.    It was not until 1993, when Rose complained to the Zoning authorities, that Erv's was required to comply with the City's zoning ordinance.

26.    The City's zoning ordinance classifies clubs like Rose's as a "cabaret", and the ordinance forbids a "cabaret" from operating within 500 feet of a childcare facility.  <u>See</u> City of

4

Allentown Zoning Ordinance, Article 1327.03(B)(4), a copy of which is attached hereto as "Exhibit B".

27.     The City's zoning ordinance requires "cabarets" to close no later than midnight each night.  <u>See</u> Zoning Ordinance, Article 1327.03(B)(10), a copy of which is attached hereto as "Exhibit C".

28.     The City's zoning ordinance also requires all BYOB establishments to close no later than midnight each night.  <u>See</u> Zoning Ordinance, Article 1327.03(E), a copy of which is attached hereto as "Exhibit D".

29.     On or about March 2000, another white-owned BYOB nightclub featuring nude dancers, "Scarlet's", opened in the City of Allentown.

30.     A child day care center is operated on the premises of the "Conditioning Center", which is less than 500 feet from Scarlet's.

31.     The City of Allentown and the Zoning Hearing Board of the City of Allentown permitted Scarlet's to open without determining the consent of its neighbors, and allowed it to be located less than 500 feet from a child day care center in violation of the ordinance.

32.     In 2002, Rose notified Allentown's zoning office that Scarlet's was located too close to a day care center, but upon information and belief, the City and its Zoning Office have ignored this violation.

33.     On January 25, 1999, Erv's was granted a "variance" by the Zoning Hearing Board, allowing it to open at specified times for longer hours than permitted by the ordinance.

34.     In effect, the zoning office created a "de minimis" variance for Featherman to allow him to extend his hours, *albeit* not for the larger number of hours now sought by Rose.  A copy of the Board's decision of January 25, 1999, is attached hereto as "Exhibit E".

35.    Pennsylvania law holds that a variance emanates from physical irregularities to the land, and is not applicable to the regulation of operating hours; on or about September 13, 1999, after Rose's request to extend hours, the ZHB denied all of his requested relief.

36.    On August 9, 1999, the day of the zoning hearing on Rose's request for extended hours, the Morning Call printed an article, on page 1 of Section B, under the banner headline, "Allentown Officials are Likely to refuse Strip Club's Request"; the unfair, prejudicial slant of the article suggests that city employees or others may have pre-judged the case and then reported that fact to the newspaper, thus denigrating Rose's civil rights and disparaging his business.

37.    A local white-owned tavern, the "Hoffbrau Haus", located in Allentown, features strippers, but because it has a state liquor license, it legally opens until 2:00 AM.

38.    Another white-owned bar in Allentown, "Fat Katz", has or had exotic dancers, and it also opens until 2:00 a.m.

39.    The white-owned "Crocodile Rock" in Allentown features live bands, but also at times features male strippers; because it has a liquor license, it too opens until 2:00 AM.

40.    "Boca Joe's", which is basically a white-owned hip-hop club, features swimsuit contests, which are quite revealing and similar to strip acts, and it opens until 2:00 a.m.

41.    The white-owned "Main Gate" nightclub has under-21 night on Fridays and stays open until 1:00 a.m., even though Allentown has a curfew requiring minors (under 18) to be in their homes by midnight;  the ordinance appears to be largely unenforced. .

42.    The Main Gate holds rave concerts that open until 4:00 AM, and that cater to children as young as 13 and 14 who are, upon information and belief, exposed to drugs, including ecstasy and "angel dust", while the police and zoning authorities take no enforcement

actions.        42.        Adult bookstores, also considered "adult" uses under the zoning code, are permitted to remain open later than midnight even though subject to the same ordinances.

43.        Although BYOB's must close by midnight, night clubs with liquor licenses, that also feature strippers or stimulating sex contests, can be open until 2:00 AM..

44.        When Rose applied for extended hours at his nightclub in 1999, the Defendants aggressively resisted the request, unlike their silent approach to the above situations.

45.        The ZHB summarily denied Rose's request for extended hours due ostensibly to the Board's excessive, unconstitutional concern for the complaints of a small number of Rose's neighbors, most of whom were identified as residents of the City of Bethlehem.

46.        At the hearing on the Rose's request for additional hours, the ZHB refused to allow Rose to present rebuttal witnesses.  See the attached copy of the ZHB decision, dated September 13, 1999, at application number 54301, which is attached hereto as "Exhibit  F ".

47.        Rose sent a letter to Tracy Samuelson dated May 23, 2002, complaining of racial discrimination in Allentown's zoning process; Ms. Samuelson did not respond to Rose's letter.

48.        By its policies of selective enforcement and discriminatory treatment of blacks and Hispanics, as described herein, the City of Allentown maintains an official policy of deliberate indifference to issues of racial rights and liberties, including in the area of zoning, and specifically herein, there was and continues to be, an indifference to Rose's civil rights.

49.        For example, two white-owned adult clubs have been given preferential treatment over Rose's club, as described herein, thereby furthering a policy of selective enforcement and racial discrimination, thereby denigrating Rose's federal and state constitutional rights.

50.     It has been and is the policy and practice of the Defendants to engage in a pattern of harassment of nightclubs owned or patronized substantially by African Americans and/or Hispanics, without applying the same harshness to white-owned nightclubs.

51.     When Rose's bar was under prior ownership and was named the "Old Flat Iron", a man was shot and killed there; when the property was a gay bar called "Rosemary's", there were severe parking problems; and, when the property was "Jeff's City Line Pub", there were male and female strippers engaging in live sex on stage; none of these transgressions were punished and no such outrageous incidents occurred since Rose took over the premises.

52.     All of the businesses identified above were white-owned and operated, and at no time did the Defendants make the type of rigorous enforcement action now applied against Rose.

53.     The ZHB has blindly accepted and unduly honored the complaints of Rose's neighbors, a majority of whom appear to reside in Bethlehem, by using their unsubstantiated comments to unfairly restrict Rose's hours, thus unconstitutionally elevating the importance of secondary effects, and creating an unnecessary, unfair, and economically crippling hardship.

54.     The City has harassed other minority nightclubs; for example, Club Volcano, which caters to Hispanic customers, was targeted by city officials; one police officer called that club a "watering hole for Hispanic drug dealers", and two other officers told Rose that the "dot heads" running the club would not be in business for long.

55.     Despite far more crime problems at liquor-licensed nightclubs, the white-owned, licensed clubs don't suffer the same harsh degree of interference as is applied to Rose.

56.     For example, Banana Joe's bands play in an outdoor area, thus creating severe noise pollution in a largely minority neighborhood; the police and zoning authorities don't apply the laws against disruptive noise because of the city's discriminatory pattern of enforcement.

57.    The police provide surveillance at white-owned Flashbacks on most evenings to *prevent* problems, but the police don't provide the same preventive service to Rose's nightclub.

58.    Allentown police ignore Code violations at white-owned nightclubs, while enforcing the same kinds of violations against minority-owned clubs; this fact was recently demonstrated when the fire marshal closed down Rose's club for minor electrical violations.

59.    BYOB clubs are unfairly and unconstitutionally discriminated against, by being forced to close at midnight, without a legally sound rationale justifying such discrimination and denial of equal protection, as opposed to clubs that have liquor licenses.

60.    In Allentown, white-owned restaurants set their own hours, but the zoning authorities dictate the hours and the content of entertainment to black restaurant owners;  for example, a black restaurant with exotic entertainment, such as Rose's, is not permitted to have more traditional entertainment; thus, the Zoning authorities have emphatically told Rose that he cannot open on Sundays for black entertainment that is non-sexual and non-adult.

61.    The Defendants also discriminate against Rose in comparison with how other city strip clubs are treated:

a.    When Rose took over his club the zoning office made him request a special exception, even though such an exception wasn't required under white ownership.

b.    Erv's operated for five years without needing a special exception.

c.    It was not until Rose complained of unequal treatment that the zoning office compelled Erv's to comply; the zoning office employees even claimed that they didn't know that Erv's existed, even though Erv's had advertised widely for years.

d.          Erv's is allowed to operate while in violation of the prohibition against being located near a children's playground, as aforesaid; upon information and belief, the Defendants did nothing to enforce that prohibition.

e.          Scarlet's is violating the prohibition against locating too close to a child day care facility, as aforesaid; this clear violation of the city's zoning ordinance, Article 1327.03(B)(4), is not enforced.

f.          The Defendants have not tried to enforce this restriction against Scarlet's, even though the day care was in business long before Scarlet's opened.

g.          The owners of Scarlet's were not required to obtain a special exception before opening, and they were not required to obtain the written approval of 51% of the people who owned property, resided, or did business within 500 feet of their club, as then required.

h.          In 2001, when two dancers at Scarlet's turned out to be only 16 years of age, the father of one of the girls called the police, but the police didn't take action against Scarlet's; other minor girls also dance at Scarlet's, but the Defendants take no action.

i.          It is well known that the dancers at Scarlet's perform totally nude "contact" lap dances, and the City does nothing; and even permits its police officers to work on the premises as bouncers; however, when nude lap dancers physically touch the customers, the dancers should be charged with prostitution, and the business closed.

j.          When Rose makes a minor infraction such as with a sign, a banner, or an extension cord, the Defendants quickly shut him down, threaten to do so, or fine him.

k.          In the last two years, there have been 4 or 5 shootings in the parking lot of Scarlet's, but the City never prosecuted or closed the business.

l.          No one from the city administration or the Allentown police ever appeared before the Zoning Board to protest the improprieties at Scarlet's, whereas such attendance by 'officials' did occur throughout Rose's applications.

62.    Rose believes and avers that he'll be punished, and will be the subject of harassment and retaliation from the City and its police, for raising the issue of racial discrimination; in fact, Rose's club was recently shut down for minor electrical violations.

63.    The City has unfairly discriminated against Rose on account of his race, by selectively enforcing its laws and ordinances against him.

a.          The City has frequently threatened Rose with fines for his signs and banners, yet thousands of white Allentown residents are permitted to hang banners from their properties without sign permits; even the City itself hangs banners without getting permits;

b.          The City objected when Rose placed a strobe light on the second floor of his business and threatened a fine if he did not remove the light, even though the light was white in color, was not directly in the line of sight of motorists; white-owned businesses, however, have been permitted to use tracing lights at street level, including Blockbuster and a business at 6th and Hamilton Streets, and nothing is done regarding such violations;

c.          The Defendants, upon information and belief, do not enforce the required closing hour at other nightclubs: on May 25, 2002, the lights went out at the Fairgrounds Hotel at approximately 2:05 AM, R. J. Gator's closed at 3:25 AM, but the Main Gate remained open even later because it was having a rave party;

d.          The Main Gate, R. J. Gator's, and the Fairgrounds Hotel are located at the same street corner, and the music emanating therefrom is heard by neighbors at least four blocks

away; there are no sound barriers to soften the noise; the city doesn't enforce the laws against noise pollution, nor is there control over the trash and public urination from the clubs' patrons;

     e.       The Defendants do not show the same concern for the neighbors of white-owned nightclubs as they do for the neighbors of Rose's club;

     f.       Rose asked for permission to open on Sundays as a 'black' club without exotic dancers, or as a black cultural center, or for other forms of black entertainment; Tracy Samuelson, the former zoning officer, told him that he can't conduct any of these activities, and she threatened removal of his "cabaret" status if he used the premises for other purposes.

     g.       The owner of Fat Katz has two other nightclubs on his property, but when Rose tried to open an adult private club on his property, the zoning office told him that he was not permitted to do so; the owner of Fat Katz and the owner of the real estate are both white.

     h.       As a result of the Defendants' decisions, Rose has been totally denied the use of the premises on Sunday's, in violation of his civil rights and liberties, including a denial of due process of law through the unlawful seizure of his property.

64.     On Friday, June 13, 2003, the City's Fire Inspector Robert C. Scheirer and its electrical Inspector, Todd H. Haney, cited Rose for numerous alleged electrical violations, and prevented Rose from opening his business that weekend.

65.     Most of the alleged violations cited by Scheirer and Haney were conditions that had passed inspection many times in the past; in fact, some of the alleged violations involved structural features that have existed since the building was built approximately 80 years ago.

66.     The Defendants and their agents did not cite these violations when that building was owned and operated by white men.

67.     Rose believes and avers that the strict inspection of Rose's business, and the citing of alleged violations not previously noted, is a means of harassing Rose in retaliation for this lawsuit against the City of Allentown.

68.     Rose believes that the Defendants are attempting to shut down his business in retaliation for this lawsuit against them.

69.     Rose believes and avers that he may be targeted for more severe harassment and punishment by the Defendants because of this lawsuit, and Rose therefore requests injunctive relief from this Honorable Court; this injunction will be necessary for remainder of this suit and should be made permanent.

70.     The actions of the Defendants, in discriminating against Rose on the basis of his race, are intentional, malicious, willful, deliberate, outrageous, and in wanton and reckless disregard of Rose's civil liberties, and as such must be deterred by an award of punitive damages.


## COUNT ONE:   Overbreadth

71.     Rose incorporates herein the allegations contained in Paragraphs 1 through 70 above, inclusive, as if set forth more fully at length.

72.     The zoning ordinances applying to BYOB clubs and those applying to adult entertainment establishments are unconstitutionally vague and overbroad in that they allow for a foreseeable governmental interpretation that could easily result in the curtailment of legitimate artistic expressions in various types of entertainment media other than Rose's, such as plays, live theater, musical concerts, and similar legitimate types of entertainment that the public is used to enjoying on a widespread, popular basis.

73.     The ordinances should be stricken down and declared void and unenforceable lest they be applied to such popular forms of artistic, creative expression that are clearly within the scope of the freedom of speech provisions of the state and federal constitutions, and within the mainstream of society and as such that are clearly protected from governmental intrusion pursuant to the state and federal guarantees of freedom of speech and expression.

**WHEREFORE**, the Plaintiff, Jimi Rose, demands judgment against the Defendants for actual and punitive damages in the amount of One Million ($1,000,000.00) Dollars per Defendant, plus interest, costs, attorney's fees, and such other relief as is deemed reasonable and necessary by the Court

### COUNT TWO:   Denial of Freedom of Speech

74.     Rose incorporates herein the allegations contained in Paragraphs 1 through 73 above, inclusive, as if set forth here more fully at length.

75.     Under Pap's A.M. v. City of Erie ("Pap's II"), 571 Pa. 375, 812 A.2d 591 (2002), the Supreme Court of Pennsylvania recently held that nude entertainment and dancing is expressive conduct, and as such is entitled to more expansive free speech protection under the Pennsylvania Constitution than apparently allowed under the United States Constitution, despite the concerns of local authorities for the secondary effects that have led such authorities to restrict nude entertainment and dancing in the past.

76.     The decision in Pap's II requires that any local ordinance negatively impacting upon protected expressive conduct must be strictly scrutinized to determine whether it addresses a legitimate municipal purpose, and whether the municipality has used the least intrusive means to achieve that purpose, and further, that it is not valid to use the fear of  "secondary effects",

14

such as anticipated crimes by club patrons, as a justification to completely prohibit or improperly restrict the right to engage in protected freedoms of expression.

77.    The decision in <u>Pap's II</u> specifically holds that addressing the secondary effects of a strip club is not an appropriate governmental motivation for applying restrictions or prohibitions upon the protected expressive conduct inherent in nude dancing and entertainment.

78.    The zoning provisions restricting Rose's operating hours are based solely upon fear of the *anticipated* secondary effects of his business, as stated in the provisions of the Code itself, and as articulated by the City's witnesses in prior and current proceedings.

79.    The decisions of the ZHB 1993 and 1999, which tried to establish, and later enforced, the limits on operating hours, are based on an improper and unconstitutional consideration of the secondary effects of the business, *albeit* such consideration is also faulty on its merits, in that the City has shown virtually no evidence of a direct causal link between the club's protected activities and the neighbors' perceived complaints.

80.    The restrictions on operating hours, contained in the 1993 grant of a special exception and in sections 1327.03(B)(10) and 1327.03(E) of the Allentown Zoning Ordinance, are therefore unconstitutional and unenforceable as violations of the free speech protections contained in the Pennsylvania Constitution.

**WHEREFORE**, the Plaintiff, Jimi Rose, demands judgment against the Defendants for actual and punitive damages in the amount of One Million ($1,000,000.00) Dollars per Defendant, plus interest, costs, attorney's fees, and such other relief this Court deems necessary

## COUNT THREE:   Denial of Equal Protection

81.    Rose incorporates herein the allegations contained in Paragraphs 1 through 80 above, inclusive, as if set forth here more fully at length.

82.    In <u>Déjà Vu of Cincinnati v. Union Township Board of Trustees</u>, 326 F.3d 791(6th Cir. 2003), the United States Court of Appeals for the Sixth Circuit held that where a local ordinance places a midnight closing time on BYOB strip clubs, but permits similar adult nightclubs with state liquor licenses to stay open to 2:30 a.m., that local ordinance is unconstitutional as a violation of equal protection and freedom of speech under the Fourteenth and First Amendments, respectively, of the United States Constitution.

83.    Rose believes that the Pennsylvania Supreme Court and the Third Circuit Court of Appeals would adopt the reasoning of <u>Déjà Vu</u> in this matter.

84.    The Allentown Zoning Ordinance requires that all BYOB "cabarets" must close by midnight each evening, but does not extend that restriction to nightclubs offering similar entertainment that have liquor licenses, thus making the ordinance unconstitutional, as aforesaid.

85.    The City of Allentown permits adult bookstores to remain open later than Rose's nightclub, thus paralleling the facts in <u>Déjà vu</u>.

86.    Further, throughout the Commonwealth of Pennsylvania, the vast majority of adult or 'nude' BYOB establishments are allowed to stay open until at least 2:00 a.m., i.e., at least until the same closing time enforced against bars, nightclubs, and restaurants with liquor licenses, and in many cases there are no mandated closing times for BYOB establishments or the closing times are considerably later than midnight and even later than 2:00 a.m.

87.    The restrictions upon Rose's operating hours, contained in the 1993 grant of a special exception, and in sections 1327.03(B)(10) and 1327.03(E) of the zoning ordinance, are unconstitutional and unenforceable as violations of the guarantees of equal protection and freedom of expression mandated by the Constitutions of the United States and of the Commonwealth of Pennsylvania.

**WHEREFORE**, the Plaintiff, Jimi Rose, demands judgment against the Defendants for actual and punitive damages in the amount of One Million ($1,000,000.00) Dollars per Defendant, plus interest, costs, attorney's fees, and such other relief this Court deems necessary

## COUNT FOUR:   Injunctive Relief

88.    Rose incorporates herein the allegations contained in Paragraphs 1 through 87 above, inclusive, as if set forth more fully here at length.

89.    The restrictions upon operating hours on BYOB clubs, contained in Allentown's Zoning Ordinance, do not apply to Rose's business because his business was opening regularly after midnight prior to the enactment of the pertinent provisions of the Zoning Code and his establishment should have been "grandfathered" as a nonconforming use.

90.    The restrictions upon operating hours on BYOB clubs, contained in Allentown's Zoning Ordinance, are unconstitutional and unenforceable because they are vague and overbroad.

91.    The restrictions upon operating hours of "cabarets", contained in Allentown's Zoning Ordinance are unconstitutional and unenforceable because they violate the free speech provisions of the Pennsylvania Constitution.

92.    The operational restrictions of "cabarets" and adult entertainment contained in the City's zoning laws are unconstitutional and unenforceable because they violate the guarantee of equal protection under the United States Constitution and the Pennsylvania Constitution.

93.    Rose has been irreparably damaged by being forced to close his business at midnight.

94.    Based on evolving case law in the Commonwealth and elsewhere, it is likely that Rose will prevail on the merits of his claims.

95.    Rose believes that he has already been the target of retaliation from the Defendants in response to the filing of this lawsuit.

96.    The Defendants will not be prejudiced, temporarily or permanently, if Rose opens until 2:00 A.M. because BYOB clubs operate freely and legally throughout the Commonwealth during hours far more expansive, liquor licensed establishments open until 2:00 a.m. and they are far more likely to present secondary problems, and because there has never been any evidence that Rose's establishment is anything other than an improvement over prior usages.

**WHEREFORE**, the Plaintiff, Jimi Rose, prays that your Honorable Court will enter an injunction against the Defendants prohibiting them from:

a.    Enforcing Allentown's zoning laws with respect to the provisions dealing with BYOB clubs, nude entertainment, and adult cabarets or other adult usages;

b.    Restricting Rose's hours and/or days of operation;

c.    Otherwise interfering with the protected activities of nude dancing and other protected forms of expression that are lawfully exercised within Rose's club;

d.    Harassing or punishing Rose in any way in retaliation for filing this lawsuit or for conducting his protected business activities; and

e.    Engaging in any other improper or unconstitutional practices that this Court may deem inappropriate to the guarantee of Rose's constitutional rights.

## COUNT FOUR:  Discrimination Under Section 1983

97.    Rose incorporates herein the allegations contained in Paragraphs 1 through 96 above, inclusive, as if set forth more fully at length.

98.    The City, through its employees and agents, acting within the authorized scope of their employment or agency, and under color of state law, have engaged in a pattern of racial discrimination against Rose in violation of Section 1983 of the Civil Rights Act.

99.    The City maintains a policy of deliberate indifference regarding the denial of basic civil rights to African Americans (and to Rose specifically) who own or operate nightclubs within the City, entitling Rose to compensatory damages, legal fees, costs, and other appropriate damages.

100.    The City's illegal activities have been carried on with wanton and reckless abandon to Rose's rights, entitling him to punitive damages.

WHEREFORE, the Plaintiff, Jimi Rose, demands judgment against the Defendants for actual and punitive damages in the amount of One Million ($1,000,000.00) Dollars per Defendant, plus interest, costs, attorney's fees, and such other relief this Court deems necessary

Respectfully submitted,

_____
JOHN J. KELLER, ESQUIRE
Attorney for the Plaintiff
I. D.  #  10282
133 N. Fifth Street
Allentown, PA  18102
(610) 770-9001


_____
W. THOMAS ANTHONY, JR., ESQUIRE
I. D.  # 30053
451 Main Street
Bethlehem, PA  18018
(610) 691-7633

19

I do hereby certify that I am the Plaintiff in this action, and that the facts and circumstances contained in the foregoing Complaint are true and correct, to the best of my knowledge, information, and belief.  I understand that any false statements herein are made subject to the penalties of 18 Pa.C.S.A. §4904, relating to unsworn falsification to authorities.


_____

JIMI ROSE


Date: