IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JIMI ROSE, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
|   v. | : | |
| | : | |
| CITY OF ALLENTOWN, and | : | NO. 02-CV-3842 |
| ZONING BOARD OF THE CITY OF | : | |
| ALLENTOWN, | : | |
|     Defendants. | : | |

ORDER

And Now, this 31st day of October, 2005, it is hereby ORDERED, that this action is DISMISSED with prejudice, due to lack of subject matter jurisdiction.

I)   PROCEDURAL HISTORY

Plaintiff, Jimi Rose, is an African-American man who operates Hollywood Nights[1], a Bring Your Own Bottle ("BYOB") nude dancing establishment in Allentown, Pennsylvania. Plaintiff's establishment is classified as a "cabaret" under the Allentown Zoning Code ("the Code").[2] The Code places restrictions on Hollywood Nights, both as a "cabaret" and as a BYOB establishment, resulting in its having to close by midnight. Plaintiff claims that the Code is unlawful because it: (1) is unconstitutionally overbroad; (2) violates his right to Freedom of Speech; and (3) was unevenly enforced against him because he is African-American, in violation of his Equal Protection rights.[3]

---

[1] "Hollywood Nights" previously operated as "Sin City Strippers."

[2] "Cabaret means a club, bar, tavern . . . which features topless or bottomless dancers." ORDINANCES OF THE CITY OF ALLENTOWN §1355.01.

[3] Plaintiff also lists as a separate claim that Defendants "engaged in a pattern of racial discrimination against Rose in violation of Section 1983 of the Civil Rights Act." Pl's Amended

On September 16, 1993, the Zoning Hearing Board ("ZHB") granted Plaintiff a "special exception" to operate the club, despite the fact that Plaintiff's "cabaret" violated zoning regulations; this exception was granted on the condition that the club close at midnight. See Order & Op. of the ZHB (Sept. 16, 1993), attachment to Aff. re: 1993 Zoning App, Ex. 1A.[4] Plaintiff appealed this hours restriction to the Court of Common Pleas of Lehigh County, but then withdrew the appeal. On May 21, 1998, Allentown enacted an ordinance that regulated the hours of operation of BYOB clubs (prohibiting operation between midnight and 8:00 a.m.). CITY OF ALLENTOWN ZONING ORDINANCE NO. 13676 § 3 (amending Zoning Code, Article 1357.03(9)(a)). As Plaintiff was already restricted to maintaining such limited hours, this ordinance did not change his business.

On August 9, 1999, Plaintiff again requested extended hours until 2:00 a.m., as well as Sunday hours, and received a hearing before the ZHB. Following the hearing, the ZHB denied Plaintiff's request. ZHB Order & Decision, attachment to Aff. re: 1999 Zoning App, Ex. 2A. Plaintiff then appealed to the Lehigh County Court of Common Pleas, arguing that the ZHB ruling was incorrect because: (1) his request was de minimis; (2) zoning was wrongly used to

---

Comp., at 19. However, §1983 creates the cause of action against state actors for civil rights violations, and it cannot be a separate substantive claim. See Rogin v. Bensalem Township, 616 F.2d 680, 686 (3d Cir. 1980) ("[Section] 1983 was designed to afford plaintiffs a cause of action for constitutional violations on the part of local governmental bodies and other state officials."). Plaintiff's alleged equal protection claim, is brought to court by way of §1983. To list it separately is both redundant and incorrect. See White v. Salisbury Township School Dist., 588 F.Supp. 608, 610 n2 (E.D. Pa. 1984). See also Lawrence v. City of Bethlehem, No. 97-CV-1824, 1997 WL 793012, at *3 (E.D. Pa. December 4, 1997) ("When a proper § 1983 action is included, a plaintiff cannot proceed under a separate constitutional count, if both depend on the same action.").

[4]This exhibit, and all other cited exhibits, are docketed at Doc. No. 78.

2

deter crime as a secondary effect; (3) the hours restriction violated his First Amendment rights; (4) the denial of his application for extended hours was an equal protection violation, because it discriminated based on race; and (5) the hours limitation constituted a "taking." Opinion of the Ct. of Common Pleas of Lehigh County (Mar. 29, 2001), at 3, attachment to Aff. re: 1999 Zoning App., Ex. 2F [hereinafter Common Pleas Op. (2001)]. The Court of Common Pleas found all of these claims without merit and Judge Reibman affirmed the ZHB decision. Id. at 5 (holding that "there is no infringement on Rose's first amendment rights" because "the only basis upon which Rose relies to allege the ZHB discriminated against him on the basis of race is what he contends is its disparate treatment of him. . . .The mere fact that Rose is black and the principal in Appeal of Greylock Arms was white are, alone, not enough to conclude that the cases were treated differently on the basis of race.").

This was followed by another appeal to the Commonwealth Court of Pennsylvania,[5] at which Judge Smith-Ribner also affirmed the ZHB's findings. Op. of the Pa. Commonw.Ct. (Feb.

---

[5] In his brief in support of his appeal, Appellant Rose squarely raised the constitutional claims presently before this Court. Initially, Rose sought reversal of the ZHB's determination "on the ground that the decision of the Zoning Board is an unconstitutional infringement upon the Appellant's First Amendment right to freedom of speech." Brief of Appellant, No. 1009 C.D. 2001 (Pa. Commw. Ct.), at 28, attachment to Aff. Re: 1999 Zoning Appeal, Ex. 2N. Rose's equal protection and racial discrimination claims were also squarely presented for decision by the court. Id. at 30 ("[T]he Board used the zoning laws to discriminate against the Appellant based upon his race, thereby denying him equal protection under the law."); See also Id. ("The unequal treatment of applicants of two different races, seeking nearly identical relief, clearly shows the racism involved in the denial of relief to the Appellant."); id. at 31 ("[T]he Appellant is African-American [.] Greylock Arms on the other hand, is white owned and operated. Given the favorable treatment afforded by the Appellee to Greylock Arms' application, the Appellant asserts that to deny him similar treatment constitutes unconstitutional selective enforcement and application of zoning laws on the basis of race."); id. at 32 ("The racial inequality can be summed up in the following context: it is impractical and illegal to grant relief to a white business owner, and then tell a black business owner, who asked for similar relief, that his request is denied. This is apartheid, and that can be found in the record.").

8, 2002), attachment to Aff. re: 1999 Zoning Appeal, Ex. 2P [hereinafter Commonw. Op. (2002)]. In upholding Judge Reibman's decision on all counts, the Commonwealth Court addressed these issues: "[W]hether the ZHB improperly denied his request for a de minimis variance; whether the ZHB improperly used its zoning authority as a method for deterring crime; whether the ZHB's denial of the variance violated Rose's First Amendment rights; whether the ZHB violated Rose's equal protection rights; and whether the ZHB's denial of a variance constituted a de facto condemnation of his property without compensation." Id. at 1. The Commonwealth Court expressly found against Rose on his First Amendment, equal protection and racial discrimination claims.

In a final attempt to revive this case at the state court level, Plaintiff filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court, which was denied. Order of the Supreme Ct. of Pa. M.D., Attachment to Aff. re: 1999 Zoning Appeal, Exhibit 2N (Doc. No. 78).

On January 24, 2003 Rose requested a second variance from the ZHB which would permit his establishment, Sin City Strippers, to remain open until 2:00 a.m. on Monday, Thursday, Friday, and Saturday nights.[6] In its written decision of January 27, 2004, the ZHB concluded: "[t]he restriction imposed by the City upon the hours of operation of BYOB clubs does not violate rights to equal protection under the law." Decision of the ZHB, No. A-56961 (Jan. 27, 2004), at 7, attachment to Aff. re: 2004 Zoning Appeal, Ex. 3A.

Rose appealed the January 27, 2004 decision of the ZHB to the Court of Common Pleas, Lehigh County. In an opinion issued on November 22, 2004, Judge Carol K. McGinley of the

---

[6] This request, of course, was encompassed in the 1999 variance request which, inter alia, sought an extension of operating hours until 2:00 a.m. seven days a week.

Lehigh County Court of Common Pleas determined that the zoning ordinance at issue (Section 13507.03 of the Allentown Zoning Ordinance) does not violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. <u>Order and Op. of the Ct. of Comm. Pleas</u> (Nov. 19, 2004), attachment to Aff. re: 2004 Zoning Appeal, Ex. 3N.

Plaintiff appealed Judge McGinley's decision to the Commonwealth Court of Pennsylvania, and the decision was affirmed. <u>Op. of the Pa. Commw. Ct.</u>, No. 2706 CD 2004 (June 16, 2005). This was followed by another appeal to the Supreme Court of Pennsylvania, which has not yet been decided.[7]

On June 18, 2002, Plaintiff filed a Complaint in the District Court of the Eastern District of Pennsylvania against the City of Allentown and the Zoning Hearing Board of the City of Allentown (Doc. No.1). This was followed by an Amended Complaint (Doc. No. 30), filed on August 21, 2003. In this Complaint, Plaintiff claims that: (1) the zoning ordinances he had contested before the ZHB are overbroad; (2) he has been denied freedom of speech; and (3) he has been denied equal protection of the laws because he is African-American. Plaintiff seeks both injunctive and monetary relief.

II)   DISCUSSION

This court does not have subject matter jurisdiction over this action. Plaintiff has already raised these claims, and received final judgments, in state court. This court is not the proper forum in which to appeal a state court judgment.

Although Defendant has not filed a Fed.R.Civ. P. 12(b)(1) motion, lack of subject-matter

---

[7]Neither the June 16th opinion of the Commonwealth Court on this matter, nor any documents related to the appeal to the Supreme Court of Pennsylvania, have been submitted into evidence or addressed by either party.

jurisdiction may be raised by the district court sua sponte. Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 420 (3d Cir.2003) ("[The court has a] continuing obligation to sua sponte raise the issue of subject matter jurisdiction when it is in question.").

Under the Rooker-Feldman Doctrine, lower federal courts are barred from exercising jurisdiction over a case that is a functional equivalent of an appeal from a state court judgment. Rather, only the Supreme Court has such authority. Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923). The Rooker-Feldman Doctrine has been expanded to include not only cases in which the claim was "actually litigated" first in state court, but also when "the claim is inextricably intertwined with [the] state adjudication." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 364 F.3d 102, 104 (3d Cir. 2004). This applies to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments. Id. Effectively, this means that a lower federal court lacks subject matter jurisdiction in a claim where "the relief requested ... requires determining that the state court's decision is wrong or ... void[ing] the state court's ruling." Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 419 (3d Cir.2003).

In this action, Plaintiff raises the same claims that were among those fully adjudicated in state court: alleged violations of his First Amendment and Equal Protection rights. First, the Commonwealth Court of Pennsylvania found that the zoning ordinances were not a First Amendment violation because "[t]he ordinance is a content-neutral time restriction aimed at regulating the hours of operation for BYOBs, not the type of entertainment it can provide. In fact, the ZHB granted Rose's 1993 special exception to permit the specific type of adult

entertainment provided on his premises." Commonwealth Op. (2002), at 7.[8]  Second, Plaintiff's Equal Protection claim was also expressly raised and decided upon at the state court level. See id. at 7 ("[T]he Court finds no support for Rose's contention that he was racially discriminated against and denied equal protection of the law . . . .").[9]  Plaintiff raises no additional constitutional claims in this action.

Plaintiff has argued that his "claims in this case are all based on incidents that occurred after the zoning decision in the 1999 case referred to by Defendants, and nothing in this case would require the District Court to review the merits of that decision." Pl's Brief in Opp. to Mot. for S.J., p. 12.  Plaintiff thus argues that this federal action, by virtue of being later in time, is necessarily based on new events.  However, plaintiff misunderstands the distinction between new events and new claims.  Plaintiff's *claims* were all settled in state court.  That the events at issue

---

[8] Plaintiff's overbreadth claim is really just an extension of his First Amendment claim, as it is an argument that speech is being unlawfully restricted.  Therefore, it need not be subjected to a separate analysis.  However, even if overbreadth were to be discussed separately, it would have no place in this cause of action because Plaintiff lacks standing to make the claim as he does.  Plaintiff does not have standing to argue that "[t]he zoning ordinances...could easily result in various types of entertainment media other than Rose's." Pl's Amended Comp., at 13.  Plaintiff does not claim that he is affected by the alleged overbreadth, but rather that it could hurt businesses and the public by restricting "plays, live theater, musical concerts, and similar legitimate types of entertainment." Id.  Accordingly, Plaintiff is making a claim for other people's injuries, in violation of Article III's "case or controversy" requirement.

[9] As already noted, Plaintiff's cause of action for these constitutional violations is created by §1983.  Accordingly, it should be noted that this case is clearly distinguishable from those in which §1983 claims are not barred by the Rooker-Feldman Doctrine.

In Ernst v. Child and Youth Services, 108 F.3d 486 (3d Cir. 1997), the §1983 claim was based on an alleged constitutional violation (substantive due process) that had not been raised in the state court proceedings.  See id. ("Although Ernst mentioned her concerns about bias on the part of the CYS defendants during the dependency proceedings, she did not articulate those concerns in constitutional due process terms.").  Contrarily, Plaintiff Jimi Rose bases his §1983 cause of action on the very same violations (discrimination and First Amendment infringement) that were raised in and decided by the state court.  See also Marran v. Marran, 376 F.3d 143 (3d Cir. 2004) (holding that a §1983 substantive due process claim is not barred by Rooker-Feldman, where substantive due process was not raised at the state level).

are ongoing does not refresh the case; in fact, it is because the state court qualified their legality that these events have been able to continue.

Since finding the Allentown zoning provisions legally unsound as applied to Plaintiff would void the state court decisions on the matter, this court does not have subject matter jurisdiction over this action.

Accordingly, this action is DISMISSED with prejudice. The Clerk of Court is directed to close this matter for statistical purposes.

BY THE COURT:


/s/
Legrome D. Davis